UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JUDY TEDFORD, as representative of
all females of Defendant who have
been denied promotion based
on their sex,

      Plaintiff,

v.

MONUMENTAL LIFE INSURANCE COMPANY,

      Defendant.
_____/

Case No. 04-10335-BC

Honorable Thomas L. Ludington

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AFFIDAVIT

On May 11, 2007, Plaintiff Judy Tedford filed a third amended complaint, in which she seeks to bring a class action on behalf of all female employees of Defendant Monumental Life Insurance Company who have allegedly been denied a promotion on the basis of their gender. Plaintiff advances claims of disparate treatment and disparate impact under Title VII of the Civil Rights Act of 1964, as amended (Title VII), 42 U.S.C. § 2000e *et seq.*, on behalf of herself and the alleged class, and claims of gender discrimination and retaliation under the Michigan Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2101 *et seq.*, on behalf of herself only. On June 28, 2007, Defendant filed a motion for partial summary judgment under Federal Rule of Civil Procedure 56 as to Plaintiff's individual claims.

I.

Plaintiff previously worked for Defendant as a life insurance sales agent in Defendant's

office in Frankenmuth, Michigan. According to the declaration of Defendant's then-area manager,[1] Matthew Balspaugh, that office had two sales managers, William Fowler and Daniel Machuk, in January 2003.

By April 2003, according to the declaration of one of Defendant's vice presidents, Philip White, Plaintiff had enrolled in Defendant's required program for agents who sought a promotion to management. Based on an evaluation dated March 28, 2003, Plaintiff was identified as an employee who was both interested in and qualified for the program. As part of that program, Plaintiff completed a questionnaire (dated August 3, 2003) regarding her willingness to relocate. Given a range of options, she indicated that she was "[n]ot at all" willing to relocate (though she also denoted a willingness to consider "all markets"). She explained her unwillingness to relocate as follows:

> Currently building our home, children in school, spouse does not want to leave this area, I might consider driving to the Detroit area for the right opportunity. (Sales manager position with sufficient income to justify commuting 150 miles round trip.)

*Pl. Mobility Questionnaire*, Dft. Br., Ex. I [dkt #28-12]. In her deposition, Plaintiff acknowledged that she did not identify any job openings, via Defendant's internal postings, that suited her geographic preferences and, thus, did not apply for any. On November 7, 2003 and on May 3, 2004, Plaintiff indicated her interest in participating in the training program.

According to the area manager's declaration, Fowler, one of the sales managers in Plaintiff's office, left in the fall of 2003 for a position (still working for Defendant) in another state. Although the Frankenmuth office had previously had two sales managers, the area manager explained his

---

[1] He is now a vice president, but at the time relevant to these events, he was the area manager of the area that included the Frankenmuth office.

decision to eliminate the second sales manager position as motivated by a challenging economic environment and a plan to realign reporting obligations in the office. That is, more experienced agents would report to Machuk and less experienced agents would report to a district manager that the area manager felt had solid training abilities, Michael Abdella.

In his declaration, one of Defendant's vice presidents confirms that an internal database shows that the second sales manager position in Plaintiff's office was eliminated on November 1, 2003. That vice president also included a memo of October 29, 2003 to the district manager from a person identified as Kate Hall, stating the same and describing the realignment of employees who had previously reported to that sales manager. The vice president admits that members of his staff cannot locate the original document requesting that change authorization, which would have required a signature from the area manager.

In his deposition, the district manager agrees that Fowler was promoted to branch manager position in Kentucky in November 2003. Plaintiff strives to emphasize that the district manager acknowledged that Fowler left for the promotion, not because his position was eliminated. Plaintiff also adds, relying only on her third amended complaint, that Fowler's promotion followed a purportedly substantiated complaint of sexual harassment, which Plaintiff states she witnessed.

The remaining sales manager, Machuk, stated in his deposition that the Frankenmuth office was a two sales manager office, even after Fowler's departure. Machuk maintains that he had no conversation with the district manager about the reduction to a single sales manager in the office and that he remained under the impression that the second sales manager position simply went unfilled. The district manager, however, states that he did relate that reduction to Machuk, although he does not specifically recall the conversation.

Around May 2004, the district manager sought to have Plaintiff take a first step toward

acting in a management capacity by serving as a mentor to another sales agent. According to Plaintiff, she felt that, in being offered the role of a senior sales agent, she was required to demonstrate her ability in a way that men were not and that she was not compensated for assuming additional responsibility. According to Machuk's deposition, the district manager directed him to remove Plaintiff from mentoring the junior sales agent when that agent's sales did not increase. Although not particularly clear from the documentary evidence, the parties seem to treat Plaintiff's removal from mentoring that agent as the equivalent of the termination of her role as senior sales agent.

In Machuk's deposition, he recalls a comment that he tends to attribute to Plaintiff, although Plaintiff attempts in her brief to suggest that Machuk, in his role as her supervisor may have made this remark.[2] The remark captured the sentiment that, in order to receive a promotion, a person would have to have sex with someone or do something wrong. On July 31, 2004, Plaintiff faxed a sentence letter of resignation to one of Defendant's vice presidents.

---

[2]The deposition colloquy between Plaintiff's counsel and Machuk follows:

Q. Did you ever make the comment to [Plaintiff] when you were trying to comfort her when she was concerned about not getting promoted that, you know, maybe she would have to have sex with someone or do something wrong in order to get promoted?
A. Actually I think she may have said that to me, and if I remember correctly I said back to her that is not true. I know the comment was said and I don't remember me saying it because that's just not me.
Q. Do you recall either way if it was you or her?
A. I do not think it was me, but I don't remember, you know. That was so many years ago so . . . [.]
Q. You recall the comment was made?
A. I know the comment was made.
Q. During a conversation between you and [Plaintiff]?
A. Yes.

*Machuk Dep.*, Pl. Rs. Br., Ex. F, pp. 23-24 [dkt #35-7].

According to the area manager, the remaining sales manager, Machuk, initially did well. Toward the end of the third quarter, his commissions, however, eventually began to drop, so much so that the area manager provided him with a subsidy to meet his basic financial obligations. (In his deposition, Machuk agreed that his paycheck had decreased significantly.) The area manager also learned of Machuk's inquiries about employment in other areas and regions and suspected that Machuk might quit shortly.

According to his deposition, a former sales agent, Stanley Page, who had been promoted to the position of sales manager in St. Louis, Missouri, kept in contact with the district manager. Due to family difficulties, Page eventually concluded, around August 2004, that a return to Michigan was advisable. Page states that his interest was in returning to the area, that his central concern was not the type of position (either sales agent or sales manager), and that he knew that the Frankenmuth office had one sales manager at that point. According to the district manager's deposition, he spoke with Page about the possibility of finding a position in the Frankenmuth office around the end of August or beginning of September 2004.

Plaintiff notes that Page was unsatisfactory in several categories on his most recent evaluation. In attempting to contrast her performance in those same areas as satisfactory, Plaintiff neglects to draw attention to the fact that her most recent evaluation also revealed deficiencies, albeit in other categories. At some point after September 2004, Machuk departed from his role at Defendant, and Page began to work as a sales manager in Defendant's Frankenmuth office.

On August 20, 2004, Plaintiff states that she filed a complaint with the Equal Employment Opportunity Commission (EEOC). No party contests that October 25, 2003 is 300 days before the date that Plaintiff filed a charge with the EEOC.

As stated above, Plaintiff has filed individual claims and claims on behalf of an alleged class

under Title VII and ELCRA, alleging gender discrimination. Now pending before the Court is Defendant's motion for partial summary judgment under Federal Rule of Civil Procedure 56(c) as to Plaintiff's individual claims, alleging disparate treatment and disparate impact under Title VII and gender discrimination and retaliation under ELCRA. On November 14, 2007, the Court held a hearing on this motion.

## II.

Under Federal Rule of Civil Procedure 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002). The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002).

## III.

### A.

As to Plaintiff's claims under Title VII, 42 U.S.C. § 2000e-5(e)(1) imposes a limitation period of 300 days for a person to file a complaint in this circumstance:

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, *such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred* . . . .

(Emphasis added.)

In *Nat'l RR. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Supreme Court upheld the dismissal of harassment claims based on events that occurred over 300 days prior to the plaintiff's filing of an EEOC complaint. There, the Court stated:

> [D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

*Id*. at 113. The Court proceeded to list a failure to promote as a discrete act, noting that it was "easy to identify." *Id*. at 114. Despite Plaintiff's reference to the Court's footnote that it did not address the question of "pattern or practice" claims, *id*. at 115 n.9, Defendant's partial motion for summary judgment challenges only the named Plaintiff's claims, which are based on the discrete act of a failure to promote.

In *Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S.Ct. 2162 (2007), the Supreme Court recently reiterated this interpretation of 42 U.S.C. § 2000e-5(e)(1). There, regarding a claim of disparate treatment, the Court refused to permit an employee to pursue a claim based on allegedly

illegal pay discrimination, when the pay was received during the limitations period but the allegedly discriminatory decision occurred outside the limitations period.

B.

As to Plaintiff's claim of disparate treatment under Title VII, a plaintiff may rely on direct or circumstantial evidence to demonstrate a Title VII claim. *See Johnson v. University of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000). If a plaintiff presents direct evidence of discrimination, then a court need not employ the framework of *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973), because the direct evidence eliminates the need for that inferential demonstration of discrimination. *See Blalock v. Metals Trades, Inc.*, 775 F.2d 703, 707 (6th Cir. 1985) (citations omitted). "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 153 (2000). In a direct evidence case, "[s]tatements by non-decision makers, or statements by decision makers unrelated to the decisional process itself [can not] suffice to satisfy the plaintiff's burden of demonstrating animus." *Rowan v. Lockheed Martin Energy Systems*, 360 F.3d 544, 550 (6th Cir. 2004) (citations and internal quotations omitted).

Plaintiff suggests that she can advance a claim based on direct evidence based on a purported comment from her superior, Machuk. Relying solely on his deposition, she contends that he allegedly told her that, in order to advance in the company, she would need to "have sex with someone or do something wrong." In adverting to this quote, Plaintiff fails to describe its context. In his deposition, Machuk initially denied making that remark and then theorized that Plaintiff said it to him as he tried to console her. Only upon prompting did Machuk allow that he could not recall who made that comment and that he could not rule out the possibility that he had. Even if the

requirement for the Court to make all reasonable inferences in favor of the non-movant in a motion for summary judgment dictated that the Court must treat this statement as one made, in fact, by Machuk, Plaintiff has proffered no evidence that Machuk participated in any alleged decision not to promote her. Moreover, nothing in the evidence suggests that this alleged comment informed on any purported decisional process not to promote Plaintiff.

Further, on November 26, 2007, Plaintiff filed a motion seeking leave to file an affidavit in which she states that Machuk did make the remark about how a promotion could be realized. Defendant filed its motion for summary judgment on June 28, 2007, and based on a stipulated order,[3] Plaintiff filed her response on October 5, 2007, with Defendant's reply due by October 17, 2007. Twelve days after the hearing on the motion for summary judgment, Plaintiff filed her motion for leave to file an affidavit. Regardless of the untimeliness of Plaintiff's request, the content of her affidavit would not alter the Court's reasoning. Even if the Court accepted the affidavit, which would create a genuine issue of material fact as to whether Machuk made the remark in question, Plaintiff still has offered no evidence that he participated in any decision not to promote her or that that comment informed on any decisional process not to promote her.

Accordingly, Plaintiff has not provided direct evidence, sufficient to withstand summary judgment, that Defendant discriminated against her based on her gender in allegedly not promoting her. Also, the Court will deny Plaintiff's motion for leave to file an affidavit as moot.

Without direct evidence, the burden-shifting analysis of *McDonnell-Douglas* will apply. *Johnson*, 215 F.3d at 573. First, a plaintiff must establish a *prima facie* case. To make out a *prima*

---

[3]Stipulation and Order Regarding Briefing Schedule for Defendant Monumental Life Ins. Co.'s Motion for Partial Summary Judgment Filed June 28, 2007 and Resetting Hearing Date, July 31, 2007 [dkt #32].

*facie* case of disparate treatment, a "plaintiff must show that: (1) [she] is a member of a protected class; (2) [she] applied for and was qualified for a promotion, (3) [she] was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the time the plaintiff's request for promotion was denied." *Bacon v. Honda of America Manufacturing, Inc.*, 370 F.3d 565, 575 (6th Cir. 2004) (citation omitted). Once a plaintiff establishes a *prima facie* case, then the defendant may respond by offering a legitimate, non-discriminatory reason for its employment action. *Johnson*, 215 F.3d at 573 (citation omitted). Then a plaintiff may rebut a defendant by demonstrating that the defendant's offered reason was only pretext. *Id.* (citation omitted).

Here, Plaintiff has not made out a *prima facie* case of disparate treatment based on circumstantial evidence. As to two elements – seeking a promotion for which she was qualified and being denied that promotion after being considered for it – she has, at best, shown her interest in a promotion. She did join a leadership program necessary to apply for a promotion. Yet she has not contested Defendant's assertion that, based on geographic limitations, she never applied for a position. While the testimony of the sole sales manager in Frankenmuth, Machuk, that the second sales manager position continued to exist but was vacant, might create an issue of fact, the belief that the position existed does not establish that Plaintiff applied for it.

Plaintiff has also shown that Defendant took a step that might have prepared her for advancement. That is, she was placed in a senior sales agent position and given mentoring responsibility for one other employee. Yet nothing in the evidence identified in the parties' filings for the instant motion substantiates the conclusion that mentoring an employee equates with consideration for a promotion.

Most importantly, the male employee who later received a promotion did not receive that

promotion during the limitation period set by 42 U.S.C. § 2000e-5(e)(1). The parties agree that Page became a sales manager after Plaintiff departed from Defendant. Plaintiff filed charges on August 20, 2004, which predates discussions by Page to explore a return to Frankenmuth. Whenever Page received that position, it occurred after Plaintiff filed her EEOC charges. Consequently, Plaintiff did not file charges within 300 days *after* when the allegedly discriminatory employment practice occurred, because the basis for her disparate treatment claim could not serve as the predicate for the charges that she filed with the EEOC. In the absence of an application by Plaintiff for a promotion, the absence of any promotion to the position that Plaintiff sought during her tenure with Defendant, and the fact that the position she sought was filled only after the statutory limitation period, Plaintiff cannot establish a *prima facie* case for her claim of gender discrimination based on disparate treatment by Defendant based on her gender. Accordingly, the Court will grant Defendant summary judgment as to Plaintiff's individual claim on that point.

C.

As to Plaintiff's claim of disparate impact under Title VII, that statute has been interpreted to "proscribe[] employment practices that are 'fair in form but discriminatory in operation.'" *Isabel v. City of Memphis*, 404 F.3d 404, 411 (6th Cir. 2005) (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971)). As decided by the Supreme Court in *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425 (1975):

> [A] plaintiff must establish a prima facie case of discrimination – i.e., the plaintiff must establish that an adverse impact has occurred. If the plaintiff succeeds, the employer must show that the protocol in question has "a manifest relationship to the employment" – the so-called "business justification." . . . If the employer succeeds, the plaintiff must then show that other tests or selection protocols would serve the employer's interest without creating the undesirable discriminatory effect.

*Isabel*, 404 F.3d at 411 (citations and internal quotations omitted). A *prima facie* case of disparate

impact requires a showing of the following elements: "(1) [the] plaintiff identifies a specific employment practice to be challenged; and (2) through relevant statistical analysis proves that the challenged practice has an adverse impact on a protected group." *Id.* (citation omitted). Critical to a disparate impact claim is identification of the purportedly neutral employment practice, such as the tests and schooling requirements for factory workers in *Griggs* and *Albemarle* or the tests required of police officers in *Isabel*.

Here, regardless of whether the limitation period of 42 U.S.C. § 2000e-5(e)(1) applies, Plaintiff has also not made out a *prima facie* case for a claim based on disparate impact. Plaintiff has offered an expert report[4] that describes a dramatic contrast between the ratio of women in management for Defendant and the ratio of women in similar positions in the insurance industry nationally. Yet demonstrating an adverse impact on a protected group through relevant statistical analysis does not satisfy the burden of a *prima facie* case. Plaintiff must also identify a specific employment practice. Here, Plaintiff leaves unclear what practice or procedure Defendant allegedly employed that was fair in form but discriminatory in effect. When posed that question at the hearing, Plaintiff's counsel replied that the practice or procedure was "promotions." In her complaint, she alleges a practice of "maintain[ing] a system for making decisions about promotions which is excessively subjective." Pl. 3d Am. Cplt., ¶ 74. Plaintiff has identified only a general structural mechanism – promotions – and her belief that the decisionmaking process is unduly subjective. Despite the force of the contrast between the status of women employed by Defendant

---

[4]Attached to its reply brief, Defendant has included "objections" to Plaintiff's reliance on an expert report in her response to Defendant's motion for summary judgment. Within those objections, Defendant moves to strike Plaintiff's expert report from her response. Because this "motion" was filed in violation of the practices and procedures specific to this Court, the Court will not consider it a motion and will, thus, not rule on the merits of that request. Defendant may, at its election, refile it as a separate motion.

and in the same industry nationally, Plaintiff cannot point to an apparent discrepancy and then ask the Court to assume that some process exists that created that difference. Rather, an element of a *prima facie* case of disparate impact requires some showing that a practice or procedure created that discrepancy, and Plaintiff has not made any demonstration on that point. Accordingly, the Court will also grant Defendant's partial motion for summary judgment as to Plaintiff's individual claim of gender discrimination based on disparate impact.

Separate from a *prima facie* case, Plaintiff also suggests that she can advance her disparate impact claim without violating the limitation period of 42 U.S.C. § 2000e-5(e)(1). After *Ledbetter* and *Morgan*, the continuing violation theory on which Plaintiff seeks to rely is thrown into significant doubt. Notably, Plaintiff seeks to rely on circuit case law that predates those Supreme Court decisions. Apart from the inference she proposes based on her expert's report, she has not provided evidence of a pattern or practice of discrimination, so she also has not provided evidence that would comply with the statutory limitation period of 42 U.S.C. § 2000e-5(e)(1).

IV.

Accordingly, it is **ORDERED** that Defendant's motion for partial summary judgment [dkt #28] is **GRANTED**. Plaintiff's individual claims of gender discrimination based on disparate treatment and disparate impact under Title VII are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Plaintiff's motion for leave to file an affidavit [dkt #41] is **DENIED** as moot.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: November 27, 2007

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 27, 2007.

                                        s/Tracy A. Jacobs